# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOUGLAS JONES,                              :
                                           :
     Plaintiff,                          :        Civil Action No.:      21-836 (RC)
                                           :
     v.                                  :        Re Document No.:       6
                                           :
DISTRICT OF COLUMBIA, *et al.*,             :
                                           :
     Defendant.                          :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

Douglas Jones alleges that he was minding his own business in a public place when District of Columbia police officers Lloyd Coward III and Timothy Evans began to harass, taunt, push, and spit at him, all unprovoked.  Compl. ¶¶ 8–42, ECF No. 1-2 at 6–20.  He brings claims pursuant to 42 U.S.C. § 1983 against Coward and Evans for violations of his Fourth Amendment rights; a § 1983 claim against Evans for violation of the First Amendment; and several common-law tort claims against both the officers and their employer, the District of Columbia.  *Id.* ¶¶ 43–104.  The officers and the District have moved to dismiss the Fourth Amendment and tort claims (but not the First Amendment claim) for failure to state a claim.  Defs.' Mot. Dismiss, ECF. No. 6; *see* Fed. R. Civ. P. 12(b)(6).  Subsequently, the Court notified the parties that it would convert the motion to dismiss into a motion for partial summary judgment to the extent it related to the tort claims against the District of Columbia.  ECF No. 11; *see* Fed R. Civ. P. 12(d), 56.  For the reasons given below, the motion to dismiss is granted with respect to the Fourth Amendment claims and all common-law tort claims other than the claim for intentional infliction of emotional

distress against Evans.  The motion for partial summary judgment is granted with respect to all common-law tort claims against the District.  The motion to dismiss is denied with respect to Jones's claim for intentional infliction of emotional distress against Evans.

## II. BACKGROUND[1]

One afternoon in early December 2017, Douglas Jones was "walking through a public outdoor facility" in Southwest Washington, D.C.  Compl. ¶ 8.  Metropolitan Police Department Officer Lloyd Coward III abruptly positioned himself in Jones's path.  *Id.* ¶ 12.  Jones stopped short of bumping into Coward and faced him head on.  *Id.* ¶ 14.  Without warning, Coward took one hand and pushed Jones, who took a few steps back, put his hands in the air, and twice asked Coward not to touch him.  *Id.* ¶¶ 15–17.

As several other officers, including Sergeant Timothy Evans, rushed toward Jones and Coward, Jones pointed to Coward in order to "identify the MPD officer that pushed him."  *Id.* ¶¶ 17–19.  Coward swatted at Jones's pointing hand but missed, and the two men exchanged words.  *Id.* ¶ 20–21.  Coward told Jones he was not intimidated and, as if to prove the point, "forcefully" pushed Jones a second time with both hands.  *Id.* ¶ 21.  "[G]et the fuck out of [my] face," yelled Coward.  *Id.* ¶ 22.  In response, Jones called Coward a coward.  *Id.* ¶ 23.  Not pleased with Jones's suggestion about his colleague, Officer Evans took a "pugnacious tone" and asked whether Jones "wanted to go to jail."  *Id.* ¶ 24.  Jones and Evans "exchange[d] derogatory comments."  *Id.* ¶ 25.

---

[1] These facts are taken from the complaint.  When evaluating a motion to dismiss for failure to state a claim, the Court accepts the factual allegations in the complaint as true.  *See, e.g.*, *Robb v. Vilsack,* No. CV 20-0929, 2021 WL 3036796, at *1 n.2 (D.D.C. July 19, 2021).

At this point, Jones thought it wise to remove himself from the escalating scene.  He backed away from the officers and headed toward a pavilion on the other side of the facility.  But Evans was not content to end the confrontation; he followed Jones to call him an "ass" and an "asshole."  *Id.* ¶¶ 26–28.  "[I]n an attempt to provoke some physical response from . . . Jones[,]" Evans bumped his chest into Jones again and again, eventually so hard that his body camera became dislodged.  *Id.* ¶¶ 29–30.  Jones's requests for Evans to stop touching him yielded only further mocking and taunting.  *Id.* ¶ 32.  Evans even went so far as to spit in Jones's face.  *Id.* ¶ 31.

Evans followed and harassed Jones for several minutes, which, in Jones's telling, prevented him from leaving the facility.  *Id.* ¶ 33.  When Jones tried to exit, Evans grabbed his MPD bicycle and followed Jones.  *Id.* ¶ 34.  For a few more minutes, Evans cycled after Jones and encouraged Jones to attack him.  *Id.* ¶ 35.  Finally, Jones left the facility.  *Id.* ¶ 36.  This unpleasant series of encounters left Jones suffering from emotional distress and mental anguish.  *Id.* ¶ 58.

Jones complained to the District of Columbia Office of Police Complaints, whose investigation concluded that both Coward and Evans had used excessive force against Jones and harassed him in violation of the D.C. Code and MPD General Orders.  *Id.* ¶¶ 40–41.  The MPD suspended both Coward and Jones without pay.  *Id.* ¶ 41.

Next, Jones went to the Superior Court for the District of Columbia and filed a seven-count complaint seeking both compensatory and punitive damages against Coward, Evans, and the District of Columbia.  Jones brought the first three counts under 42 U.S.C. § 1983[2]; they each

---

[2] As relevant here, 42 U.S.C. § 1983 provides a cause of action for individuals alleging that persons acting under color of District of Columbia law have violated their constitutional rights.  42 U.S.C. § 1983.

allege violations of his constitutional rights.  *Id.* ¶¶ 43–74.  In Count I, Jones alleges that Coward and Evans "[u]lawfully "[a]rrest[ed]" and used excessive force against him in violation of the Fourth Amendment.  *Id.* ¶¶ 43–60.  Count II alleges that Evans violated the First Amendment by threatening to arrest Jones in retaliation against his protected speech.  *Id.* ¶¶ 61–67.  Count III claims that Coward is liable for failing to intervene and stop Evans's unlawful detention of, and use of unnecessary force against, Jones.  *Id.* ¶¶ 68–74.

The remaining counts are District of Columbia-law tort claims: for intentional infliction of emotional distress against Evans (Count IV), for negligent infliction of emotional distress against both Coward and Evans (Count V), for negligence against both Coward and Evans (Count VI), and for vicarious liability for all tort claims under the doctrine of *respondeat superior* against the District of Columbia (Count VII).[3]  *Id.* ¶¶ 75–104.

Evans removed the action to the United States District Court for the District of Columbia. Notice of Removal, ECF No. 1.  Coward, Evans, and the District of Columbia (together, the "Defendants") moved to dismiss Counts I, III, IV, V, VI, and VII—but not Count II—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot. Dismiss.  In order to take account of an affidavit exhibit attached to the motion to dismiss in support of the Defendants' argument for dismissal of Count VII , the Court *sua sponte* ordered that the motion to dismiss be converted into a Federal Rule of Civil Procedure 56 Motion for Summary Judgment insofar as the motion related to Count VII.  ECF No. 11; *see* Fed R. Civ. P. 12(d). Although the conversion order gave both parties the opportunity to present further evidence on this issue, neither party responded.

---

[3] Although Jones at several points describes Evans's behavior as an "assault," *e.g.*, Compl. ¶ 31, he does not bring common-law assault or battery claims.

### III.  LEGAL STANDARDS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  However, a court considering a motion to dismiss must accept the complaint's factual allegations as true and construe them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Put another way, the court must "draw all reasonable inferences" in favor of the plaintiff.  *DC2NY, Inc. v. Acad. Express, LLC*, 485 F. Supp. 3d 113, 118 (D.D.C. 2020).

Meanwhile, a party is entitled to summary judgment only when it can "show[] that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the

litigation, and genuine disputes about material facts exist when the evidence would allow a

reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A court assessing a summary judgment motion must avoid credibility

determinations and draw all inferences in the nonmovant's favor.  *Id.* at 255.  But conclusory

assertions without any evidentiary support do not establish a genuine issue for trial.  *See Greene

v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV.  ANALYSIS

### A.  Jones Fails to State a Claim for Unlawful Seizure in Violation of the Fourth Amendment (Count I)

Jones alleges that both Coward and Evans unreasonably seized him in violation of the

Fourth Amendment.  Pl.'s Opp'n Defs.' Mot. Dismiss at 4 ("Opp'n"), ECF No. 7.  Defendants

say that Coward's and Evans's actions did not amount to a seizure.  Mem. Supp. Defs.' Mot.

Dismiss ("Mem."), ECF No. 6, at 5.  Alternatively, Defendants argue that clearly established law

did not provide Coward and Evans with notice that their actions would qualify as a seizure, so

Coward and Jones are entitled to qualified immunity.  *Id.* at 11.  As explained below, the Court

concludes that while Coward's and Evans's actions during the course of most of the alleged

events did not amount to a seizure, Coward *may* have seized Jones when he blocked his path and

pushed him toward the beginning of the encounter.  Even assuming he did, however, this seizure

did not violate clearly established rights, so Coward is entitled to qualified immunity.  Therefore,

the Court will dismiss Jones's unlawful seizure claims.

The Fourth Amendment to the United States Constitution protects the "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures."  U.S. Const. amend. IV.  "To make out a claim of unreasonable seizure, [Jones]

must show that (1) the challenged actions constitute a seizure, and (2) the seizure was unreasonable." *Robinson v. District of Columbia*, 130 F. Supp. 3d 180, 191 (D.D.C. 2015).

Jones's complaint fails at the first step, for Officer Coward's and Evans's alleged actions did not amount to a seizure under clearly established law.  There are two ways an individual can be "seiz[ed]" within the meaning of the Fourth Amendment: "either (1) by physical force, or (2) if there is no physical force, by a show of authority to which the person submits." *Flythe v. District of Columbia*, 4 F. Supp. 3d 216, 219 (D.D.C. 2014).  Jones claims that Coward seized him by physical force when he pushed him, and that both Coward and Evans seized him by show of authority when they harassed him.  Opp'n at 5–6.  The Court will address each theory in turn.

### 1.  Physical Force

Officer Coward's[4] pushes did not effect a Fourth-Amendment seizure of Jones.  A police officer carries out a seizure when he applies "physical force to the body of a person with intent to restrain." *Torres v. Madrid*, 141 S. Ct. 989, 993–94 (2021).  Even "a mere touch" can satisfy this rule, and the force need not ultimately "succeed in subduing the person to amount to a seizure." *Id.* at 994, 999.  But for an officer's application of physical force to qualify as a seizure, the officer must "use [the] force *with intent to restrain*"; that is, with the intent to "apprehend." *Id.* at 998 (emphasis in original).  Courts determine whether an officer intended to restrain by examining "whether the challenged conduct *objectively* manifests an intent to restrain," rather than by inquiring into the officer's subjective motives. *Id.* (emphasis in original).

---

[4] Jones does not argue that Officer Evans's physical contact with him was a physical-force seizure.  Opp'n at 5.  The Court will discuss Jones's argument that Evans's bumping and spitting was part of the context giving rise to a show-of-authority seizure below.

Jones has not alleged sufficient facts to support an inference that Coward objectively intended to restrain him with his pushes.  To be sure, the first push caused Jones to stumble backwards and blocked him from proceeding along his preferred path; Coward's second push also sent Jones "backwards."  Compl. ¶¶ 15, 21.  These facts might well indicate an objective intent to prevent Jones from entering the area behind Coward or to send him back in the direction he came from, but an intent to keep out or to redirect is not an intent to "restrain" or to "apprehend."  *See Torres*, 141 S. Ct. at 998.  Coward's standing in place and pushing does not suggest, for example, that he intended to stop Jones from simply turning around and walking or running in the other direction.  *Cf. id.* at 999 (holding that officers had seized a woman by shooting her because they had "applied physical force to her body and objectively manifested an intent to *restrain her from driving away*" (emphasis added)); *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *Black Lives Matter D.C. v. Trump*, No. 20-CV-1469, 2021 WL 2530722, at *20 (D.D.C. June 21, 2021) (holding that officers accused of improper seizures were entitled to qualified immunity because while "the officers attacked and improperly dispersed the protesters[,] they did not restrain them or attempt to seize them *in place*"; and noting that in fact "quite the opposite was true—the officers attempted to cause the protestors and fleeing crowd to leave their location, rather than cause them to *remain* there" (emphasis added)).

Tellingly, at least with respect to Coward's second push, Jones expressly alleges that Coward harbored (from Jones's point of view) an intent quite different from, and indeed inconsistent with, an intent to restrain: Jones tells us that right after this push, Coward was "attempt[ing] to bait [him] into a physical altercation."  Compl. ¶ 22.  An officer who tries to

incite a citizen to attack him cannot simultaneously wish to restrain the citizen; a restrained citizen would lack the freedom of movement necessary to carry out the desired attack. *See McWilliams v. DiNapoli*, No. CIV-19-212, 2021 WL 3710728, at *3 & n.3, *6 (E.D. Okla. Aug. 20, 2021) (holding that an officer did not seize a plaintiff when he grabbed the plaintiff's cigarette and hit the plaintiff's nose with his hat because this "attempt to *incite*" the plaintiff did not "objectively manifest[] an intent to *restrain*" the plaintiff, but that the officer did seize the plaintiff when he later began "punching [him] with closed fists and took hold of him to take him to the ground" (emphasis in original)), *appeal docketed*, No. 21-7045 (10th Cir. Aug. 31, 2021).

Moreover, while even slight force can suffice for a seizure, the amount of force used "remains pertinent in assessing the objective intent to restrain." *Torres*, 141 S. Ct. at 998. Officer Coward's pushes were doubtless "forceful[]," Compl. ¶ 21—this was no mere "tap on the shoulder to get [Jones's] attention," *Torres*, 141 S. Ct. at 998. But Jones stayed on his feet and retained his freedom of movement. *See United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) ("[A] seizure occurs when physical force is used to restrain movement."). Coward's pushes were thus less substantial than the sorts of force capable of obtaining control that courts have found to constitute seizures. Nothing about the quantum of force Coward used hints that he maintained an intent to restrain or apprehend Jones, as opposed to a goal of harassing him, provoking him, or forcing him to leave the area. *Compare Pinto v. Rambosk*, No. 19-CV-551, 2021 WL 3406253, at *2, *8 n.12 (M.D. Fla. Aug. 4, 2021) (officer's push that caused the plaintiff to move back about two feet and struggle to maintain balance, but did not cause him to "fall to the ground, leave his feet, or sustain any physical injury" did not manifest an objective intent to restrain), *with Salmon v. Blesser*, 802 F.3d 249, 254–55 (2d Cir. 2015) (holding that an officer who held a plaintiff "by the collar and twisted his arm behind his back" in the course of

ordering the plaintiff to leave a courthouse room employed "sufficient force intentionally to restrain [the plaintiff] and gain control of his movements"), *Acevedo v. Canterbury*, 457 F.3d 721, 724–25 (7th Cir. 2006) (officer seized a plaintiff when he rushed toward the plaintiff and struck him "hard in the side of the head with his fist," causing him "to reel backwards and fall to the ground"), *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013) (officer seized a plaintiff when his "'bull rush' forced [the plaintiff] ten to fifteen feet backward into the side of a truck, broke three ribs, punctured one lung, and caused repeated" lung collapses), *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 392 (D.D.C. 2016) ("[G]rabbing and throwing an individual to the ground indisputably qualifies as termination of movement through means intentionally applied."), *and United States v. Miller*, No. 16-CR-0072, 2016 WL 8416761, at *10 (D.D.C. Nov. 11, 2016) (holding that an officer's "chest-to-chest bear hug—a maneuver whereby [the officer] placed his arms under [the plaintiff's] shoulders and around [the plaintiff's] body in order to raise [the plaintiff's] arms upward and to prevent [the plaintiff] from accessing any firearm"—was "plainly designed to restrain [the plaintiff's] freedom of movement"), *aff'd*, 739 F. App'x 6 (D.C. Cir. 2018); *see also* Stephen E. Henderson, *"Move On" Orders As Fourth Amendment Seizures*, 2008 B.Y.U. L. Rev. 1, 16 (2008) ("[A]n order to 'get lost' emphasized by a physical shove would presumably not work a seizure.").

The allegations in Jones's complaint support an inference that Officer Coward intended to harm, interfere with, annoy, or provoke Jones. But Coward's alleged pushing, though beyond the pale, did not objectively "manifest[] an intent to *restrain*" Jones. *Torres*, 141 S. Ct. at 998 (emphasis added). And in Jones's own telling, Coward intended not to restrain Jones but to incite him to violence. The physical force of Coward's pushes therefore did not seize Jones within the meaning of the Fourth Amendment.

2. *Show of Authority—Initial Interaction with Officer Coward*

Jones next argues that both Coward and Evans seized him by making a "show of authority" that communicated that Jones was not free to leave.  Opp'n at 5–6.  To effect a seizure by show of authority, the officer must engage in conduct that "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business, or, put another way," that would have caused "a reasonable person [to believe] that he was not free to leave."  *United States v. Mabry*, 997 F.3d 1239, 1243 (D.C. Cir. 2021) (citation omitted).  "Courts addressing this issue 'consider the totality of the circumstances, including whether the suspect was physically intimidated or touched, whether the officer displayed a weapon, wore a uniform, or restricted the [plaintiff's] movements, the time and place of the encounter, and whether the officer's use of language or tone of voice indicated that compliance with the officer's request might be compelled.'"  *Id.* (citation omitted).

Thus, in contrast to the intent-of-the-officer inquiry relevant to physical-force seizures, the show-of-authority inquiry focuses on the perception of a reasonable person in the shoes of the person allegedly seized.  *E.g.*, *United States v. Eaglin*, 759 F. Supp. 25, 27 (D.D.C. 1991).  Another key difference is that unlike a physical-force seizure, a show-of-authority seizure occurs only when the defendant *submits* to the officer's show of authority.  *Id.*  Importantly, a brief moment of submission to a show of authority qualifies as a seizure, even if the person seized later ceases to comply with police orders and escapes custody.  *See Brodie*, 742 F.3d at 1061; *Flythe*, 4 F. Supp. 3d at 220.

This Court therefore must examine individual moments within the encounter between Jones and the defendant officers, rather than focus on the encounter as a whole.  As the Court will explain, Coward may have briefly seized Jones via a show of authority when he abruptly

blocked his path and pushed him, causing Jones to raise his hands in surrender.  However, Coward is entitled to qualified immunity for any seizure that occurred in this way.  And no seizure occurred after Evans arrived and Jones lowered his hands.

Let us first pause the clock near the very beginning of the encounter.  Jones was proceeding through a public facility when the fully-uniformed Officer Coward "abruptly stopped" him by "intentionally position[ing] himself directly in . . . Jones'[s] path, as to prevent . . . Jones from proceeding any further."  Compl. ¶¶ 10–12.  Coward then "reached out his hand and pushed . . . Jones in the opposite direction"; Jones took a few steps backwards "and simultaneously put both of his hands in the air while verbally requesting that . . . Coward stop touching him."  *Id.* ¶¶ 15–16.  Jones repeated his request while multiple other MPD officers rushed over.  *Id.* ¶ 17.

It is a close question whether Jones was seized at this point.  He stopped moving and surrendered with his hands up; if Coward's actions amounted to a show of authority, Jones plainly submitted to it.  *See United States v. Gibson*, 366 F. Supp. 3d 14, 30 (D.D.C. 2018) ("By raising both hands in the air after having had his hands in his pockets, Mr. Gibson 'signal[ed] submission' to Officer Wright's orders." (alteration in original)).  But it is not clear that Coward's actions amounted to a show of authority that would have caused a reasonable person to conclude he was not free to terminate the encounter.  Many, but not all, of the factors listed in *Mabry* point toward the conclusion that Jones was free to leave.  The encounter took place around 12:30 p.m. in a public place and Coward did not display a weapon.  Compl. ¶ 8; *compare United States v. Lea*, 839 F. App'x 551, 553 (D.C. Cir. 2020) (holding that an officer-citizen encounter was not a seizure in part because "the encounter took place during the day in a public setting"), *with Mabry*, 997 F.3d at 145 (the fact that "the entire encounter occurred at night"

"intensified the coercive nature of the encounter"); *see United States v. Drayton*, 536 U.S. 194, 205 (2002) ("The presence of a holstered firearm . . . is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon.").  Nor did he restrict Jones's movements in a meaningful way.  *See Mabry*, 997 F.3d at 1245.  Coward blocked Jones from proceeding along one path, but there was nothing stopping Jones from turning around and leaving the facility the same way he entered it.  *Compare United States v. Lovelace*, 357 F. Supp. 2d 39, 42 (D.D.C. 2004) (officer's parking of a cruiser so as to partially block the criminal defendant's Cadillac's mobility was not enough to communicate to a reasonable person that he was not free to leave), *with United States v. Delaney*, 955 F.3d 1077, 1082–83 (D.C. Cir. 2020) (occupant of a Jeep parked close to a cement wall was seized when officers parked their cruiser "a few feet away" "such that the Jeep would have had to execute 'a number of turns . . . to get out of the parking lot'" (omission in original)), *and Mabry*, 997 F.3d at 1245 (seizure occurred when "Mabry's avenues of egress were at least partially restricted by the officers, their car, and a fence").

And at this point, Coward had not said *anything* to Jones; there was no request to stop or even to answer questions, and therefore no "language or tone of voice" that might have "indicated that compliance with [such a request] might be compelled."  *Mabry*, 997 F.3d at 1243 (citation omitted); *see Drayton*, 536 U.S. at 204 (the fact that there was "no threat, no command, not even an authoritative tone of voice" suggested there had been no seizure).  No part of the preceding events suggested that Coward wanted to search, question, or investigate Jones.  *See, e.g.*, *Mabry*, 997 F.3d at 1245 (holding that it was reasonable for an individual to believe he was not free to leave in part because he "had already seen the police prevent one of his [two] associates from leaving and pat down both of them").

13

On the other hand, multiple uniformed officers arrived to support Coward (though not until after Jones had raised his hands).  *See United States v. Goddard*, 491 F.3d 457, 461 (D.C. Cir. 2007).  And importantly, Coward "physically intimidated [and] touched" Jones with his push.  *Mabry*, 997 F.3d at 1243.  This would have communicated to a reasonable person in Jones's shoes that Coward wanted *something* from him.  It was not clear what that something was—perhaps it was to halt, perhaps to leave the scene—but it nevertheless may have been reasonable for Jones to infer that Officer Coward desired something of him beyond simply terminating the encounter and going about his business.  *See Delaney*, 955 F.3d at 1083 ("[O]fficers need not totally restrict a citizen's freedom of movement in order to convey the message that walking away is not an option." (citation omitted)).  Officer Coward's actions were more coercive than "the seemingly routine approach of the police officer," which normally is a "hallmark" of a non-seizure "police-citizen consensual encounter."  *Id.* at 1084 (quoting *United States v. Jones*, 678 F.3d 293, 300 (4th Cir. 2012)).

All in all, there was no verbal communication to suggest that Coward wanted Jones to stop, and the push may not have clearly so communicated.  Still, mindful of the motion-to-dismiss-stage requirement to draw reasonable inferences in favor of the plaintiff, the Court is hard pressed to say that a reasonable person abruptly blocked and then pushed by an officer standing athwart his path would necessarily have felt free to leave or otherwise terminate the encounter.  *Cf. Eaglin*, 759 F.3d at 26 (holding that officers seized an individual when they blocked his path with a car, "jumped from their vehicle, yelled 'police,' and displayed drawn guns as they approached").

However, the Court need not decide this close question in order to resolve Defendants' motion to dismiss.  This is because even assuming Officer Coward did seize Jones, he is entitled

to qualified immunity with respect to any such seizure.  Qualified immunity is a doctrine that "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Thus, the doctrine "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  For a right to be "clearly established" at the time of the official's conduct, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. at 741).  The legal principle to be applied must be "dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority'" that "clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Id.* at 589–90 (quoting *al-Kidd*, 563 U.S. at 741–42).  Questions of immunity should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)); *see also Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012) (resolving a claim of qualified immunity at the motion-to-dismiss stage).

District courts have discretion to decide which prong of the qualified immunity analysis to address first. *Pearson*, 555 U.S. at 236; *see Rasul v. Myers*, 563 F.3d 527, 530 (D.C. Cir. 2009) ("[L]ower federal courts have the discretion to decide only the more narrow 'clearly established' issue 'in light of the circumstances of the particular case at hand.'" (quoting *Pearson*, 555 U.S. at 236)).  On the "clearly established" prong, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Ziglar v. Abbasi*, 137

S. Ct. 1843, 1866 (2017) (emphasis in original) (*quoting Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)); *see also id.* at 1867 ("[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).  Specificity in the governing law is "especially important in the Fourth Amendment context," and the Supreme Court has emphasized the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."  *See Wesby*, 138 S. Ct. at 590 (citation omitted).  "To delineate the body of governing law that a reasonable officer should have been aware of, this Court looks to cases from the Supreme Court and the D.C. Circuit, as well as to cases from other courts exhibiting a consensus view."  *Kyle*, 177 F. Supp. 3d at 393 (cleaned up).

       Coward is entitled to qualified immunity because neither the Supreme Court, nor the D.C. Circuit, nor a consensus of other courts has held conduct like his—broad-daylight blocking of one of several routes and a wordless, single-handed shove—to be a seizure under the Fourth Amendment.  Controlling and persuasive cases holding that a show-of-authority seizure has occurred typically involve a blockage of most or all practical paths of ingress or egress, *e.g.*, *United States v. Castle,* 825 F.3d 625, 633 (D.C. Cir. 2016); *Mabry*, 997 F.3d at 1245; verbal commands or repeated questioning, *e.g.*, *Castle,* 825 F.3d at 633.; *Mabry*, 997 F.3d at 1245; *Brodie*, 742 F.3d at 1061; *United States v. Veney*, 444 F. Supp. 3d 56, 64 (D.D.C. 2020); and/or some other signal or forceful action that unambiguously communicates a command to halt, *e.g.*, *Delaney*, 955 F.3d at 1083 (officers "train[ed their] take-down light" on defendant's cornered Jeep); *Eaglin*, 759 F.3d at 26 (officers approached defendant with guns drawn).  The parties have not cited a controlling case holding that a seizure has occurred in the absence of *any* of these circumstances.  None of them are present here: Jones could have turned around and headed

toward the facility's entrance, Coward did not say anything at all to Jones, and Coward's shove would not have unambiguously communicated to a reasonable person that he was not free to leave. Coward is entitled to qualified immunity with respect to his possible seizure of Jones when he blocked his path and pushed him.

### 3. Show of Authority—Events After the Arrival of Officer Evans

Even assuming Coward did initially seize Jones, this seizure ended when Jones ceased to submit. *See Brodie*, 742 F.3d at 1061; *Flythe*, 4 F. Supp. 3d at 220. Right after the additional officers (Evans among them) arrived, Jones lowered his hands from the surrender position and pointed at Coward. He then chose to stay where he was so that he could engage in a voluntary verbal "back and forth" with Coward in order to "g[i]ve his opinion about . . . Coward's conduct and call[] him a coward" and to "exchange derogatory comments with Evans." Compl. ¶¶ 17–25. Eventually, Jones walked away from the officers toward "a pavilion that was located on the other side of the public facility." *Id.* ¶ 26; *see United States v. Johnson*, 212 F.3d 1313, 1316–17 (D.C. Cir. 2000) (continued movements after a show of authority may suggest the absence of submission).

Crucially, after Jones ceased his initial submission to Coward, he never again submitted to any show of authority Coward, Evans, or any other officer may have made. The reason is simple: even while Evans was following him, bumping him, and spitting on him, Jones never stopped walking. Compl. ¶¶ 17–36; *Veney*, 444 F. Supp. 3d at 64 ("Veney's conduct—continuing to walk away from Officer Torres—indicates that he did not acknowledge that he was subject to the officer's authority."). A show-of-authority seizure does not occur unless the subject submits, so there was no seizure after Jones ceased his submission to Coward's first push. *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

Moreover, the Court is not convinced that there was any show of authority sufficient to cause a reasonable person to believe he could not leave once Evans and the other officers arrived.  Soon after Evans arrived, Coward pushed Jones a second time, this time "forcefully." Compl. ¶ 21.  But unlike the first push, Coward quickly explained any ambiguity with respect to what he wanted from Jones: he "yelled at . . . Jones to 'get the fuck out of [his] face' and attempted to bait Jones into a physical altercation."  *Id.* ¶ 22.  By this time, far from thinking that the officers wanted him to remain in place and submit to their authority, a reasonable person might well have concluded that the officers wanted him to leave the area as fast as possible.

This, or at least an intent to provoke rather than subdue, was the communicative thrust of Evans's behavior as well.  Evans "pugnacious[ly]" asked Jones "if he wanted to go to jail."  *Id.* ¶ 24.  This utterance was not a statement or command, *see Veney*, 444 F. Supp. 3d at 63 ("Crucially, the words Officer Torres used . . . were in the form of a statement, not a question or request."), or even a "direct *accusation*[] of criminal conduct," *United States v. Gross*, 784 F.3d 784, 788 (D.C. Cir. 2015) (emphasis in original).  Reasonably interpreted in its surrounding context, it was some sort of conditional phrase: do what my partner said and get out of his face *or* we will seize you.  And Evans did not follow Jones so that he could apprehend him and stop him from leaving the area, but rather to continue harassing him.  Once again, Jones's complaint tells us why, at least to him, it seemed Jones was bumping him with his chest and spitting on him.  It was an attempt not to stop him, but rather "to provoke some physical response from" him.  Compl. ¶ 29; *see Eaglin*, 759 F. Supp. at 27 (whether the officer intended to stop the individual may be relevant to how a reasonable person would have interpreted the officer's conduct).  Thus, Evans "constantly encouraged . . . Jones to attack him"—not to halt or submit. Compl. ¶ 35.

Jones makes the conclusory allegation that he "was prevented from leaving by Defendant Evans'[s] harassment," *id.* ¶ 33, but does not explain how.  Nothing about Evans's behavior stopped Jones from continuing his walking; in fact, he did walk away.  Jones does not allege that Evans, for example, positioned his bike across his path to trap Jones between Evans and Coward. Indeed, following and driving (or biking) alongside an individual, "[w]ithout more," cannot ground a reasonable belief that the followed individual is not free to go about his business. *Michigan v. Chesternut*, 486 U.S. 567, 574–76 (1988) (holding that an officer's following of a running suspect in a patrol car and then driving alongside him "would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon [the suspect's] freedom of movement" because the record did "not reflect that the police activated a siren or flashers; or that they commanded [the suspect] to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block [the suspect's] course or otherwise control the direction or speed of his movement").  Although Jones may not have felt free to leave, a reasonable person would have.  Jones's "subjective beliefs are not relevant to this issue."  *Miller*, 739 F. App'x at 7.

Because the only possible seizure alleged in Jones's complaint relates to Officer Coward's initial push, and because Coward is entitled to qualified immunity concerning these allegations, the Court grants Defendants' motion to dismiss the unlawful seizure claims in Count I.

## B.  Jones Fails to State a Claim for Excessive Force in Violation of the Fourth Amendment (Count I)

In addition to the unlawful seizure claim alleged in Count I, Count I also alleges that Coward and Evans violated Jones's Fourth Amendment rights by using excessive force when they spit on, pushed, and bumped him.  Compl. ¶¶ 44, 49–52.  The Court's conclusion that Jones has not alleged that a seizure occurred under clearly established law mandates the conclusion that

no Fourth Amendment excessive force violation took place under clearly established law, either. Once again, the Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  When there is no seizure (or search), the Fourth Amendment does not apply.  Thus, "[t]o establish a Fourth Amendment violation for excessive use of force by a police officer, a plaintiff must demonstrate that first, he was seized, and second, that the use of force applied in the seizure was unreasonable."  *Robinson v. District of Columbia*., 736 F. Supp. 2d 254, 259 (D.D.C. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008)); *Robinson*, 130 F. Supp. 3d at 193 ("An excessive-force claim shares with an unreasonable-seizure claim the requirement that a Fourth Amendment seizure occurred.").  Therefore, the Court grants Defendants' motion to dismiss the Fourth Amendment excessive force claim in Count I for failure to allege a seizure insofar as the claim relates to Coward's and Evans's alleged actions after Coward's initial push.  Insofar as the Fourth Amendment excessive force claim in Count I relates to Coward's conduct before Evans arrived, the Court will dismiss it on the ground of qualified immunity because these allegations do not state a claim for a seizure under clearly established law.

The Court emphasizes that even though a police use of force that is unconnected to a seizure might in some circumstances give rise to a colorable Fifth Amendment substantive due process claim (not to mention to a common-law assault or battery claim), Jones has brought and briefed his excessive force claim under the Fourth Amendment only.  *See Moore v. District of Columbia*, 79 F. Supp. 3d 121, 130 –34, 130 n.12 (D.D.C. 2015); *Robinson*, 736 F. Supp. 2d at 260–63.  The heading of Count I reads "4th Amendment Unlawful Arrest & Excessive Force." Compl. at 7.  The corresponding section of Jones's memorandum in opposition to the motion to

dismiss bears the heading "Plaintiff's Complaint Sufficiently Pleads A Cause of Action for Excessive Force Under the Fourth Amendment Against Defendants Coward and Evans," and Jones cites only Fourth Amendment case law in this section.  Opp'n at 7–9.  For their part, Defendants also solely make Fourth Amendment arguments.  Mem. at 8–10; Defs.' Reply Supp. Mot. Dismiss ("Reply"), ECF No. 9, at 3–5.  The core of Jones's complaint is that Coward and Evans used unnecessary force in the course of seizing him, and "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Graham*, 490 U.S. at 395 (emphasis in original).

To be sure, Jones's complaint also contains some language that might be read to gesture at a Fifth Amendment excessive force claim.  Just after it states under Count I that Jones has a right to be free from unreasonable searches and seizures, the complaint states that Jones "also has a right to not be denied life, liberty, and property."  Compl. ¶ 45; *see* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .").  Later, as part of the Count III bystander liability claim, Jones alleges that Evans violated his "Fourth *and Fifth Amendment* rights by unlawfully detaining him and using unnecessary force in preventing [him] from accessing a public facility without cause."  Compl. ¶ 69 (emphasis added).

But these stray remarks did not provide Defendants with a fair opportunity to respond to a Fifth Amendment claim, and they cannot outweigh Jones's styling and briefing of his excessive force claim to invoke the Fourth Amendment.  *Cf. Jiggetts v. District of Columbia*, 319 F.R.D. 408, 414, 417 (D.D.C. 2017) (holding that a complaint violated Federal Rules of Civil Procedure 8(a) and (d)(1) because it "lack[ed] sufficient clarity to give fair notice of the claims raised and

their basis" in part because there were "multiple legal theories smooshed" into individual

counts), *aff'd sub nom. Cooper v. District of Columbia*, No. 17-7021, 2017 WL 5664737 (D.C.

Cir. Nov. 1, 2017).  Therefore, the Court concludes that Jones has brought only a Fourth

Amendment excessive force claim and expresses no view on how the Fifth Amendment's "shock

the contemporary conscience" standard, *Moore*, 79 F. Supp. 3d at 130 (citation omitted), would

apply to the allegations in this case.  *See Martin v. Malhoyt*, 830 F.2d 237, 261 & n.74 (D.C. Cir.

1987) (Ruth Bader Ginsburg, J.) (evaluating an excessive force claim "under the fourth rather

than the fifth amendment" in part because the plaintiff's brief "appear[ed] to rely on a fourth

amendment analysis").  The Court grants Defendants' motion to dismiss the Fourth Amendment

excessive force claim in Count I.

### C.  Jones Fails to State a Claim for Bystander Liability (Count III)

Jones claims that "Coward is liable under the theory of bystander liability for. . .

Evans'[s] excessive force and unlawful seizure against Jones" because "Coward witnessed . . .

Evans use excessive force against" Jones yet did nothing to stop it.  Opp'n. at 10.  But an officer

may be liable on a bystander theory only when the officer "(1) knows that a fellow officer is

violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the

harm; and (3) chooses not to act."  *Moore*, 79 F. Supp. 3d at 135.  As the Court has explained,

Jones brings only Fourth Amendment claims and has failed to allege that Evans violated the

Fourth Amendment.  It follows that Coward did not know of any constitutional violation he

could have stopped.  The Court grants Defendants' motion to dismiss Count III.[5]

---

[5] Perhaps by alleging under Count III that "Evans violated . . . Jones['s] Fourth and Fifth
Amendment Rights," Jones means to allege a new Fifth Amendment violation as a basis for
bystander liability that is entirely separate from the Fourth Amendment violations he alleges
directly in Count I.  Comp. ¶ 69.  But Jones has not briefed a Fifth Amendment argument in
connection with Count III or elsewhere and has therefore waived any Fifth Amendment claim.

### D.  Jones States a Claim for Intentional Infliction of Emotional Distress (Count IV)

Jones has pleaded sufficient facts to survive Defendants' motion to dismiss his intentional infliction of emotional distress claim against Evans.  "Intentional infliction of emotional distress has been characterized as the 'tort of outrage.'"  *District of Columbia v. Tulin*, 994 A.2d 788, 800–01 (D.C. 2010) (citation omitted).  It requires proof of "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff to suffer severe emotional distress."  *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (citation omitted and cleaned up).  In support of their motion to dismiss this claim, Defendants raise arguments only on the first and second elements.[6]  They say that Jones "failed to sufficiently plead facts to demonstrate that Sergeant Evans['s] conduct was 'outrageous and extreme' and that he intended to cause [Jones] severe emotional distress."  Mem. at 13–14.  Because the mental state required to prove the second element can be inferred "from the very outrageousness of the defendant's acts," *Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 917 (D.C. Cir. 2015), Defendants' arguments merge into a single assertion that Evans's conduct was not outrageous and extreme.

The District of Columbia Court of Appeals has explained that "[t]he requirement of outrageousness is not an easy one to meet," and that the test is accordingly "strict."  *Ortberg*, 64

---

*See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)).

[6] In their reply, Defendants briefly say, without citation, that Jones has not sufficiently pleaded the third element, severe emotional distress.  Reply at 6.  Defendants waived this argument by failing to raise it in their opening brief and by failing to cite any legal authority to support it.  *See Johnson*, 953 F. Supp. 2d at 250; *Walker v. Pharm. Rsch. & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006).  In any event, Jones alleges that he suffered "severe emotional distress," "substantial emotion[al] distress, mental anguish, and diminished capacity for the enjoyment of life."  Compl. ¶¶ 58, 80.

23

A.3d at 163 (citation omitted).  Specifically, "[l]iability will only be imposed for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.* (citation omitted).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice.  *Id.* (citation omitted).  Put another way, in order to establish extreme and outrageous conduct, the plaintiff must allege facts that if recited "to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Id.* (citation omitted).

With all reasonable inferences drawn in his favor, Jones has plausibly alleged that an average member of the community told of Evans's alleged actions would find them outrageous. Evens directed derogatory comments at Jones and followed him for several minutes while calling him an "'ass' and an 'asshole.'"  Compl. ¶¶ 25–28.  He tried to bait Jones into a physical response by repeatedly bumping him with his chest, once so hard that Evans's body camera became dislodged.  *Id.* ¶¶ 29–30.  Evans mocked and taunted Jones when asked to stop this harassment and spat directly into Jones's face.  *Id.* ¶¶ 31–32.

While the insults and bumping may not have been outrageous on their own, *see Muhammad v. District of Columbia*, 881 F. Supp. 2d 115, 124–25 (D.D.C. 2012) (officer's allegedly unprovoked "violent[] push" was not sufficiently outrageous to support an intentional infliction of emotional distress claim), the Court concludes that in context, Evans's spitting put his conduct over the outrage line.  Importantly, when determining whether conduct was extreme and outrageous, context matters.  Courts should "examine 'not only the nature of the activity at issue but also the relationship between the parties, and the particular environment in which the conduct took place.'"  *Ortberg*, 64 A.3d at 163 (cleaned up).  Evans was a "high-ranking", fully-

uniformed police officer who was "duty bound to serve and protect [the] residents of the District of Columbia," Compl. ¶ 78, and "abusing a position of authority over another" is a "hallmark[] of extreme and outrageous conduct." *Ortega*, 64 A.3d at 164; *see also Drejza v. Vaccaro*, 650 A.2d 1308, 1309–10 (D.C. 1994) ("Outrageous conduct may consist of '[the] abuse of [a] position of authority, particularly by, *inter alia*, police officers.'" (citation omitted)).  Evans invoked his police authority when he "stepped in . . . Jones's face, and in a pugnacious tone, asked . . . Jones[] if he wanted to go to jail."  Compl. ¶ 24.

Another important piece of context: According to the allegations in the complaint, Evans did not have a valid police reason to be concerned with Jones.  *See Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 68 (D.D.C. 2012) (observing, without deciding, that chasing and detaining a minor "for no legitimate reason" could "arguably" qualify as outrageous conduct).  Jones was not suspected of any crime and never posed a threat to the officers.  Compl. ¶¶ 13, 38.  That distinguishes this case from decisions holding that police officer insults or uses of force were not outrageous because they were carried out in connection with authorized police practices or lawful arrests.  *See Minch v. District of Columbia*, 952 A.2d 929, 941 (D.C. 2008); *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007); *Rogala v. District of Columbia*, 161 F.3d 44, 58 (D.C. Cir. 1998); *Hargraves v. District of Columbia*, 134 F. Supp. 3d 68, 94 (D.D.C. 2015).

Finally, spitting in another's face is an especially personal and odious species of affront.  *See Rodonich v. House Wreckers Union Loc. 95 of Laborers Int'l Union of N. Am.*, No. 82 CIV. 5583, 1983 WL 31117, at *7 (S.D.N.Y. Apr. 15, 1983) (refusing to dismiss a New York-law intentional infliction of emotional distress claim based on the defendant's spitting in the plaintiff's face and using a racial slur toward the plaintiff); *Cohen v. Clark Cnty. Sch. Dist.*, No.

11-CV-1619, 2011 WL 9160944, at *6 (D. Nev. Oct. 5, 2011) (refusing to dismiss a Nevada-law

intentional infliction of emotional distress claim based in part on the defendant "swearing and

yelling at [the plaintiff] so hard that the spit from his mouth was hitting her in the face").

Construed liberally in his favor, Jones's allegations suffice to plead that Evans's harassment and

physical contact—unrelated to any legitimate police interest and punctuated by a spit in the

face—were extreme and outrageous in context.  The Court denies Defendants' motion to dismiss

Count IV.

### E.  Jones Fails to State a Claim for Negligent Infliction of Emotional Distress (Count V)

"The tort of negligent infliction of emotional distress in D.C. requires a plaintiff to show

that he or she was (1) in the 'zone of danger;' which was (2) created by the defendant's

negligence; (3) making the plaintiff fear for his or her own safety; resulting in (4) emotional

distress that was serious and verifiable."  *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 26–27

(D.D.C. 2017) (citing *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1991)).  The Defendants are

right to point out that Jones has not sufficiently pleaded the fourth element, serious and verifiable

emotional distress, and therefore has failed to state a claim for negligent infliction of emotional

distress.  Mem. at 15.  Notably, Jones's brief opposing dismissal does not make any arguments in

support of his negligent infliction of emotional distress claim.

For emotional distress to be serious and verifiable, it must manifest in some way, such as

"by an external condition or by symptoms clearly indicative of a resultant pathological,

physiological, or mental state."  *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991)

(emphasis and citation omitted); *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C.

2011) ("'Serious and verifiable' means that the distress must have manifested in an external

condition or physical symptoms.").  Jones alleges nothing of the sort.  He claims that he suffered

"severe emotional distress, mental anguish, and embarrassment," Compl. ¶ 89, but the District of Columbia Court of Appeals has held that this sort of allegation, without more, cannot support a claim of serious and verifiable emotional distress. *Sibley v. St. Albans Sch.*, 134 A.3d 789, 798 (D.C. 2016) (allegations of emotional trauma did not suffice for serious emotional distress); *see also Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 108 (D.D.C. 2018) (allegations of continued suffering of "emotional and psychological trauma" did not suffice for serious emotional distress). Jones has not sufficiently pleaded an essential element of his negligent infliction of emotional distress claim, so the Court grants Defendants' motion to dismiss Count V.

### F. Jones Fails to State a Claim for Negligence (Count VI)

Count VI does not state a claim for negligence because it relies on the same alleged intentional acts that ground Jones's Fourth Amendment and intentional infliction of emotional distress claims. *See* Compl. ¶¶ 85–86 (alleging, as the basis for Jones's negligence claim, that Coward and Evans attempted to provoke Jones into breaking the law, harassed him, and threatened him). "Intent and negligence are regarded as mutually exclusive grounds for liability." *District of Columbia v. Chinn,* 839 A.2d 701, 706 (D.C. 2003) (citation omitted); *Harris*, 776 F.3d at 916 ("Any given act may be intentional or it may be negligent, but it cannot be both." (quoting Dan B. Dobbs et al., *The Law of Torts* § 31 (2d ed. 2011)). Thus, a negligence count "in a case involving the intentional use of force by police officers . . . must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." *Chinn*, 839 A.2d at 711. Jones pleads only "intentional tortious conduct," *Daniels*, 894 F. Supp. 2d at 69; he does not plead any acts that sound in negligence, such as an allegation that the officers

"misperceived him as a threat," *Chinn*, 839 A.3d at 711; *see also Rice*, 774 F. Supp. 2d at 32–33.

As with his negligent infliction of emotional distress claim, Jones's briefing is devoid of any

argument in support of his negligence claim.  The Court grants Defendants' motion to dismiss

Count VI.  *See Harris*, 776 F.3d at 916 (dismissing negligent infliction of emotional distress

claim because it was based on the same intentional actions that grounded, among other claims, a

claim for intentional infliction of emotional distress).

### G.  The District of Columbia is Entitled to Summary Judgment on the Common-Law Tort Claims Against It (Count VII)

Jones asserts that the District of Columbia, as Coward's and Evans's employer, is liable

for all of their common-law torts under the principle of *respondeat superior*.  Compl. ¶ 102.  As

the Court has explained, the only common-law tort claim Jones has sufficiently pleaded is for

intentional infliction of emotional distress against Evans.  The District of Columbia maintains

that it is not liable even for this claim because Jones did not provide to the District pre-suit notice

of his injuries.  "To maintain a tort action for damages against the District of Columbia, a

plaintiff must, within six months of the injury, give 'notice in writing to the Mayor of the District

of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.'"

*Kirkland v. District of Columbia*, 70 F.3d 629, 632 (D.C. Cir. 1995) (quoting D.C. Code § 12-

309).[7]  As proof that Jones did not provide timely (or any) notice, the District attached an

affidavit exhibit to its motion to dismiss, in which a District employee responsible for processing

§ 12-309 notices declares that the District did not receive any notice from Jones.  Mem. Ex. 1,

ECF No. 6-1.  In order to take account of this affidavit evidence—which was not properly part of

---

[7] The District of Columbia Court of Appeals has held that non-compliance with the § 12-309 notice requirement is an affirmative defense.  *Jaiyeola v. District of Columbia*, 40 A.3d 356, 361 (D.C. 2012); *see also Dellums v. Powell*, 566 F.2d 216, 229 (D.C. Cir. 1977); *Owens v. District of Columbia*, 993 A.2d 1085, 1090 n.5 (D.C. 2010).

the record on a Rule 12(b)(6) motion to dismiss because it was neither attached to, nor referenced in, nor necessarily relied upon by the complaint, *see Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011); *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 11–12 (D.D.C. 2014); *Cogdell v. Murphy*, No. CV 19-2462, 2020 WL 6822683, at *3 (D.D.C. Nov. 20, 2020)—the Court notified the parties that it would *sua sponte* convert the motion to dismiss into a motion for partial summary judgment on Count VII and provided them fourteen days to submit any additional material. ECF No. 11. Neither party did so.

The only possibly relevant allegation in the Complaint is Jones's alleged filing of a complaint with the District's Office of Police Complaints ("OPC") on December 9, 2017, four days after the incident. Compl. ¶ 39. The District does not dispute that this filing occurred, so it is likely that certain individuals employed by the District learned of Jones's injuries within the § 12-309 six-month window. "But [§] 12-309, by its terms, does not contemplate that [a] complaint[] to [OPC] is enough to comply with the notice requirement." *Harris v. Bowser*, 404 F. Supp. 3d 190, 197 (D.D.C. 2019). Section 12-309 "is to be strictly construed because it is a departure from the common law concept of sovereign immunity." *Id.* at 198 (quoting *Doe by Fein v. District of Columbia*, 93 F.3d 861, 872 (D.C. Cir. 1996)). The statute requires "notice in writing *to the Mayor* of the District of Columbia" through the office authorized to accept notice on the Mayor's behalf. D.C. Code § 12-309 (emphasis added). Notice to other "subordinate agencies" like OPC does not suffice. *Bowser*, 404 F. Supp. 3d at 197–98.

Because Jones has not advanced any material evidence in opposition to the District's § 12-309 notice defense, the District is entitled to judgment as a matter of law in its favor on this issue. Fed. R. Civ. P. 56(a). The Court grants partial summary judgment in favor of the District

with respect to all common-law tort claims against it.[8]  *See District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000) ("Unless it demonstrates compliance with the requirements of § 12-309, a plaintiff's suit against the District is properly dismissed because no right of action or entitlement to maintain an action accrues. (internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint (ECF No. 6) is **GRANTED IN PART AND DENIED IN PART**.  Defendants' Converted Partial Motion for Summary Judgment on Count VII (ECF No. 6) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  11/09/2021                                                              RUDOLPH CONTRERAS
                                                                                      United States District Judge

---

[8] The opening paragraph of the complaint purports to bring claims against Evans and Jones in their official capacities as well as their individual capacities.  The Court dismisses all claims against Jones and Evans in their official capacities because these claims are duplicative of their claims against the District of Columbia.  *See Bowser*, 404 F. Supp. 3d. 190.